# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
November 14, 2023 Session

## STATE OF TENNESSEE v. CONNIE REGULI

**Appeal from the Circuit Court for Williamson County**
**No. W-CR190482-B      William B. Acree, Judge**

_____

### No. M2022-00143-CCA-R3-CD

_____

A Williamson County jury convicted the Defendant, Connie Reguli, of one count of facilitation of custodial interference and two counts of being an accessory after the fact. The trial court imposed an effective sentence of three years of probation after service of thirty days in confinement and denied the Defendant's request for judicial diversion. On appeal, the Defendant argues that the evidence is legally insufficient to support her convictions. She also asserts that the trial court erred by (1) failing to dismiss the indictment for its failure to include an essential element of the underlying felony of custodial interference; (2) failing to instruct the jury concerning the essential elements of custodial interference; and (3) failing to instruct the jury on the defenses of voluntary surrender and legal representation. Finally, the Defendant contends that the trial court erred in imposing a sentence of split confinement and denying her request for judicial diversion. Consistent with our decision in *State v. Hancock*, 678 S.W.3d 226 (Tenn. Crim. App. 2023), we recognize that the principal's actions in this case did not violate Tennessee Code Annotated section 39-13-306 at the time they occurred. As such, we hold that the Defendant cannot be guilty of facilitating the felony of custodial interference or being an accessory after the fact. Accordingly, we respectfully reverse the trial court's judgments, vacate the Defendant's convictions, and dismiss the case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed, Convictions Vacated, and Case Dismissed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT H. MONTGOMERY, JR., JJ., joined.

Connie Reguli, Pro Se (on appeal), Nashville, Tennessee, and Paul J. Walwyn (at trial), Brentwood, Tennessee, for the appellant, Connie Reguli.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Kim Helper, District Attorney General; and Mary Katharine Evins, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

In August 2018, the Tennessee Department of Children's Services ("DCS") received referrals about Ms. Wendy Hancock and her two children. DeAndrea Miller, who was a child abuse and neglect investigator with DCS, went to Ms. Hancock's residence, but Ms. Hancock refused to speak with her. While there, Investigator Miller saw one of Ms. Hancock's children, twelve-year-old B.B.[1]

After Investigator Miller left, Ms. Hancock went to her father's house with B.B., and B.B. stayed there for three days. On August 11, Ms. Hancock took B.B. to a hotel in Lebanon, Tennessee.

In the meantime, Investigator Miller discovered that Ms. Hancock's children were not going to school, and she made multiple unsuccessful attempts to speak with Ms. Hancock. Eventually, Ms. Hancock spoke to her attorney, the Defendant, on August 9, and the Defendant advised Ms. Hancock not to let B.B. return to school. The Defendant then made multiple phone calls to Investigator Miller, various other DCS employees and supervisors, and a law enforcement detective involved in the case.

On August 13, DCS filed a petition to remove Ms. Hancock's children from her custody. A juvenile court judge entered an order of protective custody on that same day, placing B.B. in the temporary custody of DCS. The order also stated that DCS "shall" supervise any visitation between the child and the parents.

DCS and law enforcement began looking for Ms. Hancock and B.B. but could not find them. On August 14, DCS filed a missing person's report, and the Tennessee Bureau of Investigation issued a missing and endangered child alert regarding B.B. the next day. Ms. Hancock later admitted that she knew these agencies were looking for them.

---

[1] It is the policy of this Court to identify minor victims only by their initials. Ms. Hancock's other child is not otherwise involved in this case.

On August 15, the Defendant went to the Dekalb County Clerk's Office and requested a copy of Ms. Hancock's DCS file. The clerk informed the Defendant that she could not access the file without filing a notice of appearance, which she did immediately. After reviewing the file, the Defendant asked the clerk to make a copy, but she refused to accept service of any process on Ms. Hancock's behalf.

After leaving the clerk's office, the Defendant drove to the hotel in Lebanon where Ms. Hancock and B.B. were staying. While there, the Defendant and Ms. Hancock reviewed the DCS file. They both later admitted that they knew B.B. had been placed in DCS custody at the time.

B.B. received the endangered child alert on her cell phone, and she showed this alert to her mother and the Defendant. They decided that B.B. and Ms. Hancock would stay at the Defendant's house, and the Defendant drove B.B. and Ms. Hancock to her residence in Brentwood. Ms. Hancock disabled all wireless connections on their phones to avoid being tracked, and the Defendant took Ms. Hancock's phone to her office. The Defendant also provided Ms. Hancock with a new phone to use.

Before their phones were disabled, B.B. posted on social media. Detectives saw the post and "pinged" the phone to determine B.B.'s approximate location. Brentwood police then went to the Defendant's residence, where they discovered B.B. and Ms. Hancock. When the police arrived, the Defendant was not home. But Ms. Hancock appeared to be on the phone, and the officers heard her say, "[I]t is the police, and they found us."

In July 2019, a Williamson County grand jury charged Ms. Hancock with the offense of custodial interference. In the same indictment, the grand jury also charged the Defendant with one count of facilitation of custodial interference and two counts of being an accessory after the fact to the offense of custodial interference. The trial court severed the cases and tried the Defendant and Ms. Hancock separately.[2] A jury convicted the Defendant as charged on April 20, 2022.

Following a sentencing hearing on June 24, 2022, the trial court sentenced the Defendant to three years of probation after service of thirty days in custody. The trial court also denied the Defendant's request for judicial diversion. On August 3, 2022, the trial court denied the Defendant's motion for a new trial, and the Defendant filed a timely notice of appeal nineteen days later.

---

[2] As we discuss below, Ms. Hancock was convicted of the offense of custodial interference, and this Court addressed issues related to her case in a separate appeal. *See State v. Hancock*, 678 S.W.3d 226 (Tenn. Crim. App. 2023).

**ANALYSIS**

In this appeal, the Defendant argues that the evidence is legally insufficient to support her convictions for facilitating a felony and being an accessory after the fact. She also asserts that the trial court erred by (1) failing to dismiss the indictment for its failure to include an essential element of the underlying felony of custodial interference; (2) failing to instruct the jury concerning the essential elements of custodial interference; and (3) failing to instruct the jury on the defenses of voluntary surrender and legal representation. Finally, the Defendant contends that the trial court erred in imposing a sentence of split confinement and denying her request for judicial diversion.

We address each of these issues in turn.

### A.     LEGAL SUFFICIENCY OF THE EVIDENCE

The Defendant first asserts that the evidence is legally insufficient to support her convictions for one count of facilitation of custodial interference and two counts of being an accessory after the fact to the offense of custodial interference. She argues that the lack of an underlying felony prohibits these convictions and that, therefore, no reasonable person could find these crimes occurred beyond a reasonable doubt. In response, the State argues that the proof is sufficient to sustain the convictions and that an underlying felony conviction is not necessary to establish the elements of facilitation and accessory after the fact. We agree with the Defendant.

### 1.     Standard of Appellate Review

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review is "highly deferential" in favor of the jury's verdict. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Indeed, this standard requires us to resolve all conflicts in favor of the State's theory and to view the credited testimony in a light most favorable to the State. *State v. McKinney*, 669 S.W.3d 753, 772 (Tenn. 2023). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (internal quotation marks and citation omitted). Where the State fails to prove an essential element of a charged offense, the only remedy available to the court is the dismissal of the charge. *See State v. Parker*, 350 S.W.3d 883, 909 (Tenn. 2011)

("[A] court reviewing the sufficiency of the evidence must determine whether *each* element of the conviction offense is supported by sufficient proof. If the proof does not adequately support each and every element, the defendant is entitled to a reversal of the conviction." (emphasis added)).

## 2. Facilitation of Custodial Interference

The Defendant first argues that the evidence is legally insufficient to support her conviction of facilitation of custodial interference. At the time of the alleged offenses, the General Assembly provided that the offense of custodial interference could be committed in several different ways. *See* Tenn. Code Ann. § 39-13-306(a)(1)-(5) (2018). As is relevant to this case, the legislature defined the offense of custodial interference as follows:

> It is the offense of custodial interference for a natural parent . . . of a child younger than eighteen (18) years of age to: . . . (2) Detain the child within this state or remove the child from this state after the expiration of the noncustodial natural or adoptive parent or guardian's lawful period of visitation, with the intent to violate . . . a temporary or permanent judgment or a court order regarding the custody or care of the child[.]

Tenn. Code Ann. § 39-13-306(a)(2). Additionally, a person is guilty of facilitating a felony when, "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a) (2018). "In general, where the defendant does not know that another person intends to commit a specific felony, the defendant cannot be guilty of facilitating that felony." *State v. Robinson*, No. W2022-00459-CCA-R3-CD, 2023 WL 2669906, at *13 (Tenn. Crim. App. Mar. 29, 2023), *no perm. app. filed*.

Importantly, in order to sustain a conviction for facilitating a felony, the State is "required to prove the *commission* of a specified felony and the *assistance* the [defendant] gave to the person" committing the felony. *State v. Dych*, 227 S.W.3d 21, 40 (Tenn. Crim. App. 2006) (emphasis added). As such, to obtain a conviction for facilitation of custodial interference, the State must have proven (1) that the principal, Ms. Hancock, committed the offense of custodial interference of a natural parent's period of visitation expiring; and (2) that the Defendant facilitated the offense knowing Ms. Hancock intended to commit that specific felony.

To establish the underlying felony of custodial interference, the State was required to prove that a court order granted Ms. Hancock lawful visitation rights with B.B. and that,

with intent to violate this order, Ms. Hancock detained B.B. after her lawful visitation period expired. *See State v. Hancock*, 678 S.W.3d 226 (Tenn. Crim. App. 2023); Tenn. Code Ann. § 39-13-306(a)(2). In Ms. Hancock's appeal, we rejected the argument that the offense created by subsection (a)(2) created "a broad, general offense that involves detaining a child in Tennessee in violation of a custody or care order under *any* circumstance." *Hancock*, 678 S.W.3d at 239. Instead, we recognized that the statute "seeks to prohibit interference with a *visitation order*, whether that interference occurs during the visitation period or after that period has expired." *Id.* (citing Tenn. Code Ann. § 39-13-306(a)(5), (a)(2)) (emphasis added).

In that light, we held that Ms. Hancock's behavior, though troubling, did not constitute the offense of custodial interference because she was not subject to a *visitation order* as required by subsection (a)(2). *Id.* at 240. Indeed, although we remanded Ms. Hancock's case to the trial court, we specifically recognized that

> if the trial court had charged the jury with all of the statutory elements of the offense, which should have included language regarding the expiration of a lawful period of visitation, the evidence *would never have been sufficient* to support a conviction for custodial interference. This is because there is no proof in the record before us that Defendant was the noncustodial parent whose lawful visitation period expired.

*Id.* at 242-43 (emphasis added).[3]

The evidence in the Defendant's trial was not materially different than the evidence we analyzed in Ms. Hancock's trial. As such, our decision in *Hancock* is dispositive. We again conclude that Ms. Hancock's conduct, while troubling, did not constitute a crime under subsection (a)(2) at the time it occurred. Because no felony occurred, the Defendant could not have been guilty of facilitating a felony offense. Accordingly, the evidence was legally insufficient to support the Defendant's conviction for facilitation of custodial interference. We respectfully reverse the trial court's judgment, vacate the conviction, and dismiss the charge.

---

[3] As we observed in *Hancock*, the General Assembly has since amended the custodial interference statute to criminalize the very conduct that was at issue in these cases. *See Hancock*, 678 S.W.3d at 243 n.9; 2023 Tenn. Pub. Acts, ch. 286, § 1 (eff. July 1, 2023) (making it an offense for a parent or other family member to "[h]arbor or hide a child within or outside this state, knowing that the child has been placed in the custody of the department of children's services pursuant to a protective custody order or an emergency custody order entered by a court.") (codified at Tenn. Code Ann. § 39-13-306(a)(6) (Supp. 2023)).

### 3.      Accessory After the Fact

The Defendant also argues that her convictions for accessory after the fact are not supported by legally sufficient evidence.  The State charged the Defendant in this case with two separate counts of accessory after the fact to the offense of custodial interference.  The first count charged that the Defendant provided Ms. Hancock with the means to avoid arrest, trial, conviction, or punishment for interfering with B.B.'s custody.  The second count charged her with harboring or concealing Ms. Hancock after Ms. Hancock committed the felony of custodial interference.

The General Assembly has defined the offense of accessory after the fact as follows:

> A person is an accessory after the fact who, after the commission of a felony, with knowledge or reasonable ground to believe that the offender has committed the felony, and with the intent to hinder the arrest, trial, conviction or punishment of the offender: (1) Harbors or conceals the offender; (2) Provides or aids in providing the offender with any means of avoiding arrest, trial, conviction or punishment[.]

Tenn. Code Ann. § 39-11-411 (2018).  As the statute's plain language makes clear, the offense of accessory after the fact requires that an underlying felony be committed *before* a defendant's actions can be classified as aiding or harboring the offender.  Although the principal need not be convicted of the underlying felony for liability to attach, *State v. Gold*, No. M2005-00186-CCA-R3-CD, 2006 WL 772006, at *2 (Tenn. Crim. App. Mar. 28, 2006), *perm. app. denied* (Tenn. Aug. 28, 2006), the statute's text requires proof that (1) a felony was committed by the principal; and (2) the defendant knew or had reasonable grounds to believe that the principal committed the felony.

In this case, we have concluded that Ms. Hancock's conduct did not constitute a crime under subsection (a)(2) when it occurred.  Because Ms. Hancock was not involved in "the commission of a felony," the Defendant's actions could not have aided or harbored Ms. Hancock after the commission of a felony.  Accordingly, we conclude that the evidence is legally insufficient to support the Defendant's two convictions for accessory after the fact.  We respectfully reverse the trial court's judgments, vacate the convictions, and dismiss these charges.

## B. ADDITIONAL ISSUES RAISED BY THE DEFENDANT

In light of our holding that the evidence is insufficient to support the Defendant's convictions, the Defendant's remaining issues are rendered moot. However, we recognize the possibility that the parties may seek further appellate review. As such, we address the Defendant's remaining claims so as not to pretermit any issue raised in this appeal, as we are required to do. *See State v. Pendergrass*, 13 S.W.3d 389, 395 (Tenn. Crim. App. 1999) (finding that the evidence was legally insufficient to support the defendant's convictions but holding that an intermediate court must nevertheless address the remaining issues); *Jacobs v. State*, 450 S.W.2d 581, 581 (Tenn. 1970) (stating that the intermediate court of appeals may not pretermit issues entirely).

### 1. Challenges to the Indictment

Turning to the Defendant's additional issues, she first argues that the trial court improperly denied her motion to dismiss the indictment. More specifically, she asserts that the indictment failed to allege that Ms. Hancock detained B.B. "after the expiration of the noncustodial parent's lawful period of visitation," as required by Tennessee Code Annotated section 39-13-306(a)(2). She also alleges that it is unclear whether the grand jury made a specific finding that Ms. Hancock kept B.B. after her lawful visitation period expired in violation of a court order. In response, the State argues that the trial court correctly denied the Defendant's motion to dismiss because the indictment sufficiently notified the Defendant of the charged offenses.[4] We agree with the State.

The Sixth and Fourteenth Amendments to the United States Constitution require the accused "to be informed of the nature and cause of the accusation." *See also* Tenn. Const. art. I, § 9. Further, an indictment "will be deemed valid if it provides sufficient information '(1) to enable the accused to know the accusation to which [an] answer is required, (2) to furnish the court [with an] adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy.'" *State v. Duncan*, 505 S.W.3d 480, 484-85 (Tenn. 2016) (quoting *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997)). Additionally, "indictments which achieve the overriding purpose of notice to the accused will be

---

[4] The trial court denied the Defendant's motion to dismiss, concluding that the expiration of the visitation period was not an essential element of the offense. In *Hancock*, we disagreed with this conclusion but affirmed the denial on the separate ground that the indictment provided sufficient notice to the accused. *See Hancock*, 678 S.W.3d at 236. The State urges this Court to follow *Hancock* and affirm the trial court's denial on these separate grounds.

considered sufficient to satisfy both constitutional and statutory requirements." *State v. Hammonds*, 30 S.W.3d 294 (Tenn. 2000).

We addressed this issue directly in *State v. Hancock*. In that case, this Court recognized that there were "obvious omissions" in this indictment, but we noted that "the failure to specifically allege an element of the offense is not fatal if the elements are necessarily implied from the allegations made." *Hancock*, 678 S.W.3d at 235-36 (citation and internal quotation marks omitted). We observed that the indictment cited the applicable statute, quoted a portion of the statute that only applied to the offense created by subsection (a)(2), and identified that the Defendant was charged with a Class E felony offense. *Id.* at 236. From these circumstances, the Court concluded that the "Defendant was surely provided with sufficient notice to surmise which section of the statute she was accused of violating." *Id.* We see no reason to depart from our prior judgment concerning this particular indictment. *See* Tenn. Sup. Ct. R. 4(G)(2) ("Opinions reported in the official reporter . . . shall be considered controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction.").

With respect to the Defendant's argument alleging possible deficiencies with the grand jury's findings, we are not permitted to review the grand jury's deliberate processes, whether to evaluate its findings or to determine what evidence it may have considered. *See State v. Carruthers*, 35 S.W.3d 516, 532-33 (Tenn. 2000) ("Where an indictment is valid on its face, it is sufficient to require a trial of the charge on the merits to determine the guilt or innocence of the accused, regardless of the sufficiency or legality of the evidence considered by the grand jury."); *State v. Welch*, 586 S.W.3d 399, 403-04 (Tenn. Crim. App. 2019) ("[T]he courts of this state follow the ancient rule that the court will not review the judgment of the grand jury for the purpose of determining whether or not the finding was on sufficient evidence." (citation and internal quotation marks omitted)). Indeed, "[t]he grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime." *Kaley v. United States*, 571 U.S. 320, 328 (2014). Because it is well-established that "the sufficiency and legality of the evidence considered by a grand jury is not subject to judicial review," *State v. Dixon*, 880 S.W.2d 696, 700 (Tenn. Crim. App. 1992), we affirm the trial court's denial of the Defendant's motion to dismiss the indictment. The Defendant is not entitled to relief on this issue.

### 2. Jury Instructions

The Defendant next raises several challenges to the jury instructions in this case. More specifically, the Defendant argues that the trial court failed to instruct the jury that an essential element of the offense of custodial interference is the expiration of a lawful

visitation period. She also asserts that the trial court failed to instruct the jury on ex post facto principles after modifying the definition of the offense. Finally, she contends that the jury should have been instructed on the defenses of voluntary surrender of the child before arrest and on the provision of legal services.

Regarding the first and second issues, the State concedes that the trial court erred in omitting an essential element of the offense in the jury instructions. However, the State also argues that the trial court properly declined to instruct the jury on the defenses of voluntary surrender and provision of legal services because the proof did not fairly raise these issues at trial. We address each of these issues in turn.

### a.      Standard of Appellate Review

A defendant is entitled "to a correct and complete charge of the law so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Perrier*, 536 S.W.3d 388, 403 (Tenn. 2017) (citation and internal quotation marks omitted). In general, "trial courts have the duty, without request, to give proper jury instructions as to the law governing the issues raised by the nature of the proceeding and the evidence introduced at trial." *State v. Cole-Pugh*, 588 S.W.3d 254, 260 (Tenn. 2019) (citation and internal quotation marks omitted). A jury "charge 'is erroneous if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law.'" *State v. James*, 315 S.W.3d 440, 446 (Tenn. 2010) (citation and internal quotation marks omitted) "Questions involving the propriety of jury instructions are mixed questions of law and fact," which this Court reviews de novo with no presumption of correctness. *State v. Benson*, 600 S.W.3d 896, 902 (Tenn. 2020); *State v. Hollon*, 671 S.W.3d 561, 564 (Tenn. Crim. App. 2023).

### b.      Expiration of Lawful Visitation Period

The Defendant first argues that the trial court's instruction on the offense of custodial interference improperly removed the essential element that the child's detention occur "after the expiration of the noncustodial natural parent's lawful period of visitation." The State concedes that the trial court's instruction defining "custodial interference" was prejudicially erroneous. We agree with the parties.

We addressed this precise issue in *Hancock*. There, we concluded that a nearly identical instruction "omit[ted] a material element of the offense, namely the expiration of a period of lawful visitation." *Hancock*, 678 S.W.3d at 239. We also found that the error was not harmless beyond a reasonable doubt because the instruction "effectively lowered the State's burden of proof at trial." *Id.* at 240. The same result should follow here. As

such, even if the proof were legally sufficient to sustain the Defendant's convictions, we would be required to vacate those convictions and remand the case for a new trial with proper offense instructions.

### c. Judicial Modification of the Offense

The Defendant next argues that the trial court erred by declining to provide a jury instruction indicating that the court had modified the law by removing essential elements from the statutory definition of custodial interference. Specifically, she argues that the trial court should have instructed the jury that it must find that the Defendant "could have 'expected' and 'defended' the Court's change in the language of the statute after the alleged conduct." The State views this issue as an extension of the Defendant's argument that the jury instructions did not identify all of the essential elements of the underlying felony of custodial interference. It also argues that this instruction was waived because it was not requested in writing.

We agree with the State that this issue is an extension of the Defendant's argument that the jury was improperly instructed on the essential elements of custodial interference. After all, had the trial court properly instructed the jury, the Defendant's proposed instruction would not have been necessary. As such, if the proof were legally sufficient to sustain the Defendant's convictions, we would grant relief on this issue by vacating her convictions and remanding the case for a new trial with proper offense instructions.

### d. Defense of Voluntary Surrender

The Defendant next asserts that the trial court failed to instruct the jury that it is a legal defense to custodial interference that Ms. Hancock voluntarily surrendered B.B. before her arrest. The State argues that the trial court correctly determined that the proof did not support this requested instruction on voluntary surrender. We agree with the State.

In this case, Tennessee Code Annotated section 39-13-306(c)(2) provides that "[i]t is a defense to custodial interference" that "the individual detained or moved in contravention of . . . the order of custody or care, was returned by the defendant voluntarily and before arrest or the issuance of a warrant for arrest." Before a trial court may instruct the jury about a general defense, "[t]he proof must fairly raise the existence of this defense, and once the defense is raised, the State has the responsibility to disprove its application beyond a reasonable doubt." *State v. Hart*, 676 S.W.3d 103, 110 (Tenn. Crim. App. 2023) (citing Tenn. Code Ann. § 39-11-203(c)). To determine whether the proof has fairly raised a general defense, "a court must consider the evidence in the light most favorable to the

11

defendant and draw all reasonable inferences in the defendant's favor." *Hawkins*, 406 S.W.3d at 129.

Perhaps understandably, the parties argue this issue from the perspective of the statute as it was misapplied—or as if the "order of custody or care" referenced in the general defense was the DCS custody order. Candidly, it is difficult for us to see how the proof raised this defense when the offense to which it would have been applied simply did not exist at the time. As before, we believe this issue is simply an extension of the Defendant's argument that the jury was improperly instructed on the essential elements of custodial interference. As such, if the proof were otherwise legally sufficient to sustain the Defendant's convictions, we would grant relief on this issue by vacating her convictions and remanding the case for a new trial with proper offense instructions.

### e.      Defense of Providing Legal Services

The Defendant argues that the trial court also failed to allow a jury instruction on the general defense that her actions amounted to providing legal services to Ms. Hancock. The State asserts that the trial court correctly determined that the proof at trial did not support this requested instruction. We agree with the Defendant.

Tennessee Code Annotated section 39-11-411(b) provides as a general defense to the crime of accessory after the fact that "[t]his section shall have no application to an attorney providing legal services as required or authorized by law." As we noted above, before a trial court may instruct the jury about a general defense, the defense must be fairly raised by the proof. *Hart*, 676 S.W.3d at 110. In this case, we conclude that the defense of legal representation was fairly raised in the proof. For example, the State introduced the DCS case file as evidence at trial, and this file contained the Defendant's Notice of Appearance identifying herself as Ms. Hancock's attorney. A Senior Associate Counsel for DCS explained to the jury that this notice "is a document that an attorney would file in a case to say, formally, in the court file, I represent this person." This DCS lawyer also confirmed for the jury that the Defendant "continued to have the services" of the Defendant from August to December 2018.

In addition, Ms. Hancock testified that the Defendant was her attorney. She also stated that she followed her attorney's advice and asked her attorney to contact law enforcement. She further said that she gave her phone and computer to the Defendant specifically to preserve evidence on those devices.

The "quantum of proof necessary to fairly raise a general defense is less than that required to establish a proposition by a preponderance of the evidence." *Benson*, 600

12

S.W.3d at 905. Based on our review of the record as a whole, we conclude that the proof fairly raised the defense so as to be submitted to the jury upon proper instructions. As such, if the evidence were otherwise legally sufficient to sustain the Defendant's convictions, we would grant relief on this issue by remanding the two charges alleging accessory after the fact for a new trial with proper instructions on this general defense.

### 3.    Sentencing

In her last issue, the Defendant argues that the trial court erred by denying her request for judicial diversion and ordering a period of incarceration. More specifically, she asserts that the trial court abused its discretion when it sentenced her to a longer period of incarceration than was requested by the State. The Defendant further contends that the trial court "punished" her for making public statements about the case.

In response, the State argues that although they initially conceded the Defendant's sentence should be vacated, the sentence itself was still proper. Additionally, the State contends that the trial court did not abuse its discretion in denying the Defendant's request for judicial diversion. We agree with the State.

### a.    Standard of Appellate Review

Our supreme court has recognized that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This standard of appellate review applies to a trial court's decision to grant or deny judicial diversion. *See State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014). It also applies to a trial court's decision to grant or deny probation or alternative sentencing. *See State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012).

A trial court abuses its discretion when it "(1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous assessment of the evidence." *State v. Mangrum*, 403 S.W.3d 152, 166 (Tenn. 2013). While trial courts need not comprehensively articulate their findings with regard to sentencing, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed [on the record]." *Bise*, 380 S.W.3d at 706.

13

## b.     Denial of Judicial Diversion

The Defendant initially asserts that the trial court erred in denying her request for judicial diversion. Our supreme court has described judicial diversion as a "legislative largess" available to a qualified defendant. *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999). Under the judicial diversion statute in this context, the jury must first find that the qualified defendant is guilty of an offense that is otherwise eligible for diversion. The verdict is then "held in abeyance[,] and further proceedings are deferred under reasonable conditions during a probationary period established by the trial court." *Rodriguez v. State*, 437 S.W.3d 450, 455 (Tenn. 2014).

If the defendant completes this diversionary period, the trial court will discharge the defendant and dismiss the case without any finding of guilt or the entry of a judgment of guilt. *See, e.g.*, *State v. Judkins*, 185 S.W.3d 422, 425 (Tenn. Crim. App. 2005); Tenn. Code Ann. § 40-35-313(a)(2). The defendant may then seek to have expunged all official records relating to the "arrest, indictment or information, trial, finding of guilty, and dismissal and discharge.'" *State v. Parsons*, 437 S.W.3d 457, 495 (Tenn. Crim. App. 2011) (quoting *Schindler*, 986 S.W.2d at 211). This expunction "restore[s] the person, in the contemplation of the law, to the status the person occupied before the arrest or indictment or information." Tenn. Code Ann. § 40-35-313(b).

In this case, the parties do not dispute that the Defendant is eligible to receive judicial diversion under Tennessee Code Annotated section 40-35-313(a)(1)(B)(i). Importantly, one's statutory eligibility for judicial diversion does not "constitute entitlement to judicial diversion." *King*, 432 S.W.3d at 323. "In other words, satisfaction of the eligibility criteria simply allows the trial court to grant diversion in appropriate cases." *State v. Sheets*, No. M2022-00538-CCA-R3-CD, 2023 WL 2908652, at *7 (Tenn. Crim. App. Apr. 12, 2023) (citation and internal quotation marks omitted), *no perm. app. filed*.

The judicial diversion statute itself does not identify the criteria by which trial courts should consider whether a qualified defendant is a favorable candidate for judicial diversion. However, in two cases, *State v. Parker*, 932 S.W.2d 945 (Tenn. Crim. App. 1996) and *State v. Electroplating, Inc.*, 990 S.W.2d 211 (Tenn. Crim. App. 1998), this Court identified seven common-law factors that a trial court must weigh and consider in this analysis:

The criteria that the trial court must consider in deciding whether a qualified accused should be granted judicial diversion includes: (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's

social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused. *Parker*, 932 S.W.2d at 958 (footnote omitted); *Electroplating*, 990 S.W.2d at 229. Our supreme court has affirmed the use of these common-law factors, *see State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017); *State v. Dycus*, 456 S.W.3d 918, 929 (Tenn. 2015), and it has required that "the trial court must weigh the factors against each other and place an explanation of its ruling on the record," *King*, 432 S.W.3d at 326.

In this case, the record establishes that the trial court properly considered all relevant factors in assessing the Defendant's suitability for judicial diversion. The trial court found that the Defendant's amenability to correction, social history, physical and mental health, and lack of criminal record all weighed in favor of the Defendant. However, the trial court considered the remaining factors and determined they weighed against the Defendant. The trial court cited the Defendant's lack of remorse and said that she willfully violated a court order and counseled her client, Ms. Hancock, to do the same. The trial court further determined that granting judicial diversion could send a message to the public that it is acceptable to disregard a court order and that, therefore, denial of judicial diversion would deter others and serve the ends of justice. Finally, the trial court determined that these factors outweighed the others and denied the Defendant's request for judicial diversion.

When reviewing a trial court's decision for an abuse of discretion, we must have "awareness that the decision being reviewed involved a choice among several acceptable alternatives." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). To that end, we first look to see whether the trial court identified and applied the correct legal standard. *McCaleb*, 582 S.W.3d at 198. Next, we consider whether the trial court made a decision that took into account the applicable law and the relevant facts. *Lee Med., Inc.*, 312 S.W.3d at 524. We then examine whether the trial court's decision "was within the range of acceptable alternative dispositions." *Id.* Importantly, while "[a]ppellate courts have the task of articulating the boundaries of the permissible range of the trial court's options," the choice among alternatives within that range is left to the trial court. *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 306 (Tenn. 2020).

In this case, the trial court identified the correct standards of law that applied to the consideration of judicial diversion. It considered and weighed the appropriate factors in the context of the relevant facts, and it made a reasoned choice between acceptable alternatives. Thus, even if "reasonable minds can disagree with the propriety of the decision," we conclude that the trial court acted within its discretion to deny the Defendant's request for judicial diversion. *McCaleb*, 582 S.W.3d at 186. As such, even if we upheld the Defendant's convictions, we would not conclude that the Defendant is entitled to relief on this ground.

15

### c.     Sentence of Split Confinement

Finally, the Defendant asserts that the trial court abused its discretion in sentencing her to a period of thirty days of incarceration, which was greater than the forty-eight hours that the State had initially requested.  In response, the State argues that the trial court properly weighed the considerations applicable to the Defendant's case and appropriately found that full probation would unduly depreciate the seriousness of the offense and that a period of incarceration would serve as a deterrent to others.  We agree with the State.

Our supreme court has recognized that "[t]he guidelines applicable in determining whether to impose probation are the same factors applicable in determining whether to impose judicial diversion." *Trent*, 533 S.W.3d at 291 (citation and internal quotation marks omitted).  To that end, "[w]hen considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public." *State v. Feagins*, No. E2022-00311-CCA-R3-CD, 2023 WL 2784813, *3 (Tenn. Crim. App. Apr. 4, 2023) (citation and internal quotation marks omitted), *no perm. app. filed.*

In this case, the trial court imposed a sentence of incarceration after considering the relevant sentencing factors and the purposes and principles of sentencing.  First, the trial court found that the facts and circumstances surrounding the offenses weighed against granting the Defendant full probation.  The court specifically noted that the Defendant was an attorney who violated a court order and advised her client to disregard the same order.  The court also determined that a sentence of full probation would unduly depreciate the seriousness of the offense and would not deter others from committing similar crimes in the future.  As in its analysis of judicial diversion, the trial court identified the correct legal standards, properly considered the relevant sentencing factors, and made a reasoned decision consistent with the purposes and principles of sentencing.  As such, we conclude that the trial court acted within its discretion to impose a sentence of split confinement.

The Defendant argues, in part, that the trial court abused its discretion by sentencing her to a longer period of incarceration than that recommended by the State.  However, the trial court is not bound by the State's sentencing recommendations, and it may keep its own counsel as to the appropriate sentence consistent with the purposes and principles of sentencing. *See State v. Iceman*, No. M2016-00975-CCA-R3-CD, 2017 WL 4805118, at *30 n.10 (Tenn. Crim. App. Oct. 24, 2017) ("Regardless, the Defendant has not provided this court with any authority, and we know of none, that the trial court may not sentence beyond the recommendation of the State."), *perm. app. denied* (Tenn. Feb. 14, 2018).

Accordingly, even if we upheld the Defendant's convictions, we would not find that the Defendant is entitled to relief on this ground.

## CONCLUSION

In summary, and consistent with our decision in *State v. Hancock*, 678 S.W.3d 226 (Tenn. Crim. App. 2023), we recognize that the principal's actions in this case did not violate Tennessee Code Annotated section 39-13-306 at the time that those actions occurred. As such, we hold that the Defendant is not guilty of facilitating the felony of custodial interference or being an accessory after the fact. Accordingly, we respectfully reverse the trial court's judgments, vacate the Defendant's convictions, and dismiss the case.


_____
TOM GREENHOLTZ, JUDGE

17